IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION | ) ) ) | |
| Plaintiff, | ) ) ) | NO. 17-cv-1002 |
| v. | ) ) | |
| 2098 RESTAURANT GROUP, LLC | ) ) | **JURY TRIAL REQUESTED** |
| and | ) ) | |
| 2103 RESTAURANT GROUP, LLC., | ) ) | |
| Defendants. | ) ) ) | |

COMPLAINT

NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment policies and practices on the basis of sex and provide appropriate relief to a class of female employees of the Glen Carbon, Illinois International House of Pancakes restaurant which includes Vickie Clark, Lauren Hurst, Tia Jenkins, Megan O'Brien, Ashley Quigley, Lindsey Quigley, Tracy Quigley, Nikki Strasen, Brianne Timmons, Donna Warnecke, Madison Miller and other female employees who were adversely affected by them (collectively "aggrieved female employees").  The aggrieved female employees were subjected to unlawful harassment based on sex including but not limited to offensive sexual touching, comments and gestures.  At least two of the aggrieved female employees were forced to resign as a result of the sexually hostile work environment at the Glen

1

Carbon IHOP.

Plaintiff also seeks relief for Charles Schlottner, a male employee at the Alton, Illinois IHOP restaurant who was subjected to unlawful sex-based harassment including unwelcome sexual propositions, groping and comments by the restaurant's general manager.

Count I alleges that while employed at the Glen Carbon IHOP between 2011 and 2013, the aggrieved female employees were subjected to unwelcome and offensive sexual conduct and comments by male employees including the restaurant's general manager Rami Ramadan ("R. Ramadan"), and cooks Ernesto Xivir/Exavier (a/k/a Garrison/Gerson) ("Garrison") and Humberto Cudena/Caldena ("Cudena/Caldena").1  Such comments and conduct were severe or pervasive, altered the terms and conditions of employment and created a hostile and abusive work environment.  Despite knowledge of the pervasive sexual harassment, Defendants and owner K. Ramadan failed to investigate or take effective corrective action, and instead condoned it.

Count II alleges the sexual harassment by R. Ramadan, Garrison, Cudena/Caldena and others created an abusive, intimidating and sexually-hostile environment that adversely affected the terms and conditions of the aggrieved female employees' employment and was so intolerable that female employees including Brianne Timmons and Megan O'Brien were forced to resign.

Count III alleges that while employed at the Alton IHOP, Charles Schlottner was subjected to egregious and unlawful harassment because of his sex by the restaurant's general manager Bassam ("Samuel") Ramadan (hereafter "S. Ramadan").

<u>JURISDICTION AND VENUE</u>

---

1 During the Commission's investigation of the underlying charges, Defendants provided two last names for each cook, and Plaintiff refers to them herein by both last names.

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 706(f) (1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f) (1) and (3) ("Title VII").

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of Illinois.

## PARTIES

3.      Plaintiff Equal Employment Opportunity Commission (the "Commission") is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4.      At all relevant times, Defendant 2098 Restaurant Group, Inc. ("2098 RG") has been an Illinois corporation doing business in Glen Carbon, Illinois and has continuously had at least 15 employees.

5.      Khalid Ramadan ("K. Ramadan") is the sole owner of Defendant 2098 RG which operates IHOP restaurant #2098 in Glen Carbon, Illinois ("Glen Carbon IHOP").

6.      At all relevant times, K. Ramadan oversaw the operations and employees of the Glen Carbon IHOP including his brother Rami Ramadan ("R. Ramadan") the restaurant's general manager during a substantial portion of the relevant period.  K. Ramadan adopted and implemented the personnel policies of the Glen Carbon IHOP, including the sexual harassment policy, and was responsible for their enforcement.

7.      At all relevant times, Defendant 2103 Restaurant Group, Inc. ("2103 RG") has been an Illinois corporation doing business in Alton, Illinois and has continuously had at least 15

employees.

8.      K. Ramadan is the sole owner of 2103 RG which operates IHOP restaurant #2103 in Alton, Illinois ("Alton IHOP").

9.      At all relevant times, K. Ramadan oversaw the operations and employees of the Alton IHOP including the general manager S. Ramadan who is his cousin.  K. Ramadan adopted and implemented the personnel policies of the Alton IHOP, including the sexual harassment policy, and was responsible for their enforcement.

10.      At all relevant times, R & R Restaurant Group, Inc. ("R & R RG") has been a Missouri corporation doing business in O'Fallon, Illinois and has continuously had at least 15 employees.

11.      K. Ramadan is the sole owner of R & R RG which operates IHOP restaurant #2046 in O'Fallon, Illinois ("O'Fallon IHOP").

12.      At all relevant times, K. Ramadan oversaw the operations and employees of the O'Fallon IHOP.   He adopted and implemented the personnel policies of the O'Fallon IHOP, including the sexual harassment policy, and was responsible for their enforcement.

13.      At all relevant times, Twin Restaurant Group, Inc. ("Twin RG") has been an Illinois corporation doing business in Decatur, Illinois and has continuously had at least 15 employees.

14.      K. Ramadan is the sole owner of Twin RG which operates IHOP restaurant #5449 in Decatur, Illinois ("Decatur IHOP").

15.      At all relevant times, K. Ramadan oversaw the operations and employees of the Decatur IHOP.  He adopted and implemented the personnel policies of the Decatur IHOP,

including the sexual harassment policy, and was responsible for their enforcement.

16.     At all relevant times, 5334 Restaurant Group, Inc. ("5334 RG") has been a Missouri corporation doing business in Kansas City, Missouri and has continuously had at least 15 employees.

17.     K. Ramadan is the sole owner of 5334 RG which operates IHOP restaurant #5334 in Kansas City, Missouri ("Kansas City IHOP").

18.     At all relevant times, K. Ramadan oversaw the operations and employees of the Kansas City IHOP.  He adopted and implemented the personnel policies of the Kansas City IHOP, including the sexual harassment policy, and was responsible for their enforcement.

19.     At all relevant times, K & R Restaurant Group, Inc. ("K & R RG") has been a Missouri corporation doing business in O'Fallon, Missouri and has continuously had at least 15 employees.

20.     K. Ramadan is the sole owner of K & R RG which operates IHOP #5317 restaurant in O'Fallon, Missouri ("O'Fallon MO IHOP").  Prior to January 2016, K. Ramadan and R. Ramadan each owned fifty percent of K & R RG.

21.     At all relevant times, K. Ramadan oversaw the operations and employees of the O'Fallon MO IHOP. K. Ramadan adopted and implemented the personnel policies for that restaurant, including the sexual harassment policy, and was responsible for their enforcement.

22.     At all relevant times, Sara, Inc. has been a Missouri corporation doing business in Saint Peters, Missouri and has continuously had at least 15 employees.

23.     K. Ramadan is the sole owner of Sara, Inc. which operates IHOP restaurant #5328 in Saint Peters, Missouri ("Saint Peters IHOP").  Prior to January 2016, K. Ramadan and R.

5

Ramadan each owned fifty percent of Sara, Inc.

24. At all relevant times, K. Ramadan oversaw the operations and employees of the Saint Peters IHOP. He adopted and implemented the personnel policies of the Saint Peters IHOP, including the sexual harassment policy, and was responsible for their enforcement.

25. At all relevant times, Jenna, Inc. has been a Missouri corporation doing business in the Wentzville, Missouri and has continuously had at least 15 employees.

26. K. Ramadan is the sole owner of Jenna, Inc. which operates IHOP restaurant #2074 in Wentzville, Missouri. ("Wentzville IHOP"). Prior to January 2016, K. Ramadan and R. Ramadan each owned fifty percent of Jenna, Inc.

27. At all relevant times, K. Ramadan oversaw the operations and employees of the Wentzville IHOP. He adopted and implemented the personnel policies of the Wentzville IHOP, including the sexual harassment policy, and was responsible for their enforcement.

28. K. Ramadan adopted and implemented the personnel policies, including the sexual harassment policy, of Defendants 2098 RG and 2103 RG and the other IHOP entities and restaurants identified in paragraphs 4 through 27 above. He was responsible for the implementation and enforcement of these policies which were all substantially the same.

29. Upon information and belief, 2098 RG and 2103 RG (and K. Ramadan's other IHOP entities and restaurants identified in paragraphs 4 through 27 above) implemented and maintained a common sexual harassment policy and failed to effectively address employee complaints of sexual harassment. Defendants, K. Ramadan and R. Ramadan failed to prevent or correct the unlawful sexual harassment at the Glen Carbon and Alton IHOPs during the relevant period.

30.     At all relevant times, K. Ramadan was responsible for decisions concerning the discipline and discharge the employees of the IHOP entities and restaurants identified in paragraphs 4-27 above.

31.     At all relevant times, Defendants, K. Ramadan and R. Ramadan operated the IHOP entities and restaurants in paragraphs 4 through 27 above as a single employer.

32.     The personnel files and other business records of the IHOP entities and restaurants in paragraphs 4 through 27 above are maintained at K. Ramadan's office.

33.     During the relevant period, K. Ramadan directed the human resources functions of the IHOP entities and restaurants in paragraphs 4 through 27 above. He transferred members of management and other employees among IHOP entities and restaurants identified above.

34.     K & R Investment Group, LLC is a Missouri limited liability company owned by K. Ramadan. Upon information and belief, K. Ramadan operates this entity to manage the Glen Carbon, Alton, Decatur and O'Fallon, Illinois IHOP restaurants. Prior to January 2016, K. Ramadan and R. Ramadan each owned fifty percent of this entity.

35.     K. Ramadan's IHOP businesses and restaurants identified in paragraphs 4 through 27 above were covered by a single umbrella insurance policy.

36.     At all relevant times, K. Ramadan operated Defendants 2098 RG and 2103 RG, K & R Investment Group, LLC and the other IHOP entities and restaurants identified above as a single employer which has been continuously engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## STATEMENT OF CLAIMS

37.     More than thirty days prior to the institution of this lawsuit, Clark, Hurst, Jenkins,

O'Brien, Ashley Quigley, Lindsey Quigley, Tracy Quigley, Schlottner, Strasen, Timmons, and Warnecke, each filed a charge of discrimination with the Commission alleging violations of Title VII by Defendant 2098 RG and/or 2103 RG.  All conditions precedent to the institution of this lawsuit have been fulfilled.

38.     From late 2011 through at least mid-2013, Defendant 2098, K. Ramadan and R. Ramadan engaged in unlawful employment practices based on sex at the IHOP restaurant located at 4233 S. Illinois 159, Glen Carbon, Illinois 62034 in violation of Section 703(a) of Title VII, 42 U.S.C. §2000e-2(a).

39.     Since approximately Fall 2012, Defendant 2103, K. Ramadan and S. Ramadan engaged in unlawful employment practices based on sex at the IHOP restaurant located at 181 Homer Adams Parkway, Alton, Illinois, 62002 in violation of Section 703(a) of Title VII, 42 U.S.C. §2000e-2(a).

<u>COUNT ONE</u>

(Title VII – Sex Discrimination/Harassment)

40.     Plaintiff re-alleges paragraphs 1 through 39 above and incorporates them into Count I.

41.     The aggrieved female employees including Clark, Hurst, Jenkins, O'Brien, Ashley Quigley, Lindsey Quigley, Tracy Quigley, Strasen, Timmons, and Warnecke were subjected to unlawful sexual harassment during their employment at the Glen Carbon IHOP in violation of Section 703(a) of Title VII, 42 U.S.C. §2000e-2(a) as more specifically described below.  The unlawful harassment consisted of sexual conduct and comments that were unwelcome, offensive, directed at the aggrieved female employees because of their sex, and was

sufficiently severe or pervasive to alter the terms and conditions of their employment and create an abusive environment.

### Brianne Timmons

42.      In December 2011, Brianne Timmons began working at the Glen Carbon IHOP. She was sixteen years old when hired and this was her first job.   She worked at the Glen Carbon IHOP during 2012 as part of a cooperative class at Edwardsville High School for course credits toward graduation.  To complete the co-op program and graduate as planned, she was required to remain employed until late December 2012.

43.      In mid-2012, Rami Ramadan became the general manager of the Glen Carbon IHOP, and began making frequent, unwelcome and offensive sexual comments to Timmons and other female employees such as telling them that they were sexy and their pants looked good. Although Timmons told R. Ramadan that she did not like his comments and wanted him to stop, he continued to make these and other offensive, unwelcome sex-based comments.  R. Ramadan was the highest-ranking management employee at the Glen Carbon IHOP and K. Ramadan's brother.

44.      In October or November 2012, R. Ramadan's comments and conduct became more egregious and intimidating.  He made sexually provocative remarks to Timmons on numerous occasions, stating for example that "he loved her butt" and that it "was the most perfect thing he had ever seen." He began sending her sexually provocative and threatening text messages such as "You are really playing to (sic) hard to get girl, loosen up a little;" "Don't make me get violent babe, and take what I want;" "Or we can meet and have sex somewhere that would be fun;" "I wasn't asking I was telling your (sic);" and "Your (sic) going to cooperate one

way or the other."  R. Ramadan repeatedly asked Timmons to have sex with him.

45.     In early November 2012, R. Ramadan called Timmons into his office, pushed her against the closed door, pressed up against her and placed his hands on her buttocks.  Although he refused to allow her to leave, Timmons resisted his advance and managed to open the office door and escape.

46.     R. Ramadan grabbed Timmons' buttocks on multiple occasions, often in front of cooks Cudena/Caldena and Garrison.  On one occasion while in the IHOP parking lot, R. Ramadan simulated having sex with Timmons by dry humping her.

47.     Timmons repeatedly told R. Ramadan to stop his sexually harassing conduct and comments which she found offensive, humiliating, and intimidating.  As the general manager of the Glen Carbon IHOP, R. Ramadan was one of Defendants' management representatives to whom employees were directed to report sexual harassment under their policy.  R. Ramadan's offensive, unwelcome sexual behavior and comments made Timmons want to avoid coming to work.  Despite her repeated protests, Defendants, K. Ramadan and R. Ramadan took no action to investigate or to stop the harassment.  Instead, R. Ramadan continued to engage in sexually harassing conduct and threatened Timmons when she resisted.

48.     Shortly before Thanksgiving 2012, R. Ramadan approached Timmons from behind, put his arms around her and smelled her hair.  She told him to stop and tried to get away. He then put a steak knife to her throat and told her that he didn't like to be told no.  When R. Ramadan released her, Timmons immediately left the restaurant.

49.     While R. Ramadan held the knife to her neck, Timmons feared that he would injure and/or sexually assault her.  After he released her, Timmons was frightened and shaking.

10

She was afraid to tell her parents, her co-op teacher or anyone else because she believed she would be fired, fail the course and not be allowed to graduate as planned. When R. Ramadan engaged in this harassment and threatened Timmons in 2012, she was a seventeen year-old high school senior.

50.     After this knife incident, Timmons was nervous at work and afraid she would encounter R. Ramadan. She constantly wanted to leave the restaurant. A week or two after this incident, Timmons' co-op teacher learned about the situation and notified school officials. On or about December 5, 2012, Timmons told her parents about R. Ramadan's behavior. Around this same time, the police were notified. In addition to R. Ramadan's threatening behavior and comments, S. Ramadan, general manager of Defendants' Alton IHOP and cousin of R. Ramadan and K. Ramadan, threatened Timmons about reporting R. Ramadan's misconduct.

51.     In early December 2012, Timmons was forced to resign as a result of the hostile, intimidating and abusive environment.

**Vickie Clark**

52.     Vickie Clark started working as a waitress at the Glen Carbon IHOP in December 2011. During her employment, she was frequently subjected to unwelcome, offensive sexual comments and conduct by Garrison including "will you kiss me" and "I want to [noises simulating those made while having sex] you." Garrison rubbed his body against Clark and hugged her when she tried to pass by him at work. Garrison and Cudena/Caldena called her a "puta," a Spanish term that has a meaning similar to "whore" or "slut." Clark complained to general manager R. Ramadan but Defendants, K. Ramadan and R. Ramadan took no action to stop the harassment.

11

**Tia Jenkins**

53.     Tia Jenkins started as a waitress at the Glen Carbon IHOP in December 2011. Garrison and Cudena/Caldena frequently harassed her by, among other things, hugging her, grabbing her buttocks and/or touching her breasts.  Garrison once tried to stick his hands down her pants and, on another occasion, tried to rub his face on her breasts.  Garrison also repeatedly asked Jenkins to have sex with him.  Cudena/Caldena often made sexually explicit gestures at her.

54.     She also saw Garrison, Cudena/Caldena, and R. Ramadan sexually harass other female employees on a regular basis.

55.     Jenkins complained to Rami Ramadan, the general manager, about the sexual harassment but he did nothing and instead told her "that's just how they play."  Although aware of the unlawful harassment, Defendants, K. Ramadan and R. Ramadan took no action to stop it.

**Megan O'Brien**

56.     Megan O'Brien worked at the Glen Carbon IHOP from May 2012 until she was forced to resign in May 2013.  On numerous occasions during her employment, Garrison made offensive sexual comments and engaged in physical misconduct toward her, including grabbing her buttocks, pulling her into the prep station to hug her, and touching her body in other sexually-offensive ways. Garrison made unwelcome, offensive comments to her such as asking her to have sex with him and telling her that "he wanted to masturbate to her."

57.     O'Brien complained about the harassment to general manager R. Ramadan, but the conduct continued.  She also complained to another general manager Judy Lepping who told her to ignore Garrison. She finally resigned because she could no longer endure the harassing

conduct and comments and the abusive, humiliating atmosphere which caused her to suffer extreme anxiety and feel physically ill.  Defendants, K. Ramadan and R. Ramadan knew or should have known that this abusive work environment would make a reasonable employee resign but refused to stop the harassment.

### Lauren Hurst

58.     In approximately January 2012, Lauren Hurst began working at the  Glen Carbon IHOP.  In August or September 2012, cooks Garrison and Cudena/Caldena started making offensive, unwelcome sexual comments to her such as "I love you, are you going to repeat it back to me?" and calling her "puta". Hurst resigned in September 2012, but in February 2013 Tracy Quigley (who was promoted to supervisor), convinced her to return to work at the Glen Carbon IHOP.

59.     Hurst continued to experience sexual harassment when she returned to the restaurant.  She also saw Garrison and Cudena/Caldena attempt to hug (and be pushed away) most of the female employees at the Glen Carbon IHOP, including but not limited to, Ashley Quigley, Tracy Quigley, Tia Jenkins, and Megan O'Brien.

60.     Hurst complained to the restaurant's general manager at the time, Judy Lepping, but she did nothing to stop the harassment. She also complained to K. Ramadan who similarly took no action.  The sexually harassing conduct and comments continued until Garrison stopped working at the restaurant in February or March 2013.

### Ashley Quigley

61.     Ashley Quigley worked as a waitress, and at times, a shift supervisor at the Glen Carbon IHOP between mid-December 2011 and mid-2013 when she was discharged. When she

started her employment, general manager R. Ramadan began inappropriately touching her in a sexual manner.  On multiple occasions, he ran his hand across and smack her buttocks.  She also saw R. Ramadan engage in similar conduct toward other female employees, including Tia Jenkins, Lindsey Quigley, Tracy Quigley, Tiffany Ricks, Brianne LNU, Megan O'Brien, Kelsey Seats, Mariah LNU, Giana Patterson, Tayla Toutloian, Krystal Hunt, Sharon Wilcox, Tasha Timms, and GariAnn Hanlon.

62.    A. Quigley told R. Ramadan that she did not like his behavior and to stop touching her, but he continued the harassing conduct.

63.    A. Quigley also experienced and observed sexually harassing comments and misconduct by male employees including Garrison and Cudena/Caldena.  They made sexual comments and tried to touch female employees in an inappropriate sexual manner.  For example, Garrison would shake his penis through his pants while saying "I have gravy." He would also put a banana in the server's window with grapes to the side so it looked like a penis.  He followed female employees into the cooler so frequently that the female employees tried not to go into the cooler alone.

64.    Although A. Quigley repeatedly complained to general managers R. Ramadan and Judy Lepping about Garrison and Cudena/Caldena, nothing was done except on one occasion Cudena/Caldena was sent home for the rest of the day.  Defendants, K. Ramadan and R. Ramadan took no effective action to stop the sexually harassing and intimidating conduct and comments which did not stop.

**Nikki Strasen**

65.    Strasen was employed as a waitress at the Glen Carbon IHOP from approximately

September 2012 until March 12, 2013 when she was terminated.  When she started at the Glen Carbon IHOP, Garrison told her that she made him hot and gestured as if he had an erection. Garrison also told her that he goes into the bathroom and "jerks off thinking about your behind" and liked the way her pants made her ass look big.  Garrison touched her in an inappropriate, unwelcome and offensive manner on multiple occasions.  For example, he hugged her, put his hands on her lower back close to her behind and often grabbed her buttocks.

66.     Strasen complained to then general manager, Judy Lepping, about Garrison's harassment.  Lepping told Strasen to "suck it up" and did nothing to stop it.  Strasen called the IHOP corporate hotline on March 9, 2013 to complain that Garrison grabbed her buttocks and those of other female employees.  Within an hour of that complaint, K. Ramadan attempted to convince Strasen to call back and tell the hotline representative that her complaint was false.  She refused to do so, and on March 12, 2013 she was removed from the schedule permanently.

**Donna Warnecke**

67.     Donna Warnecke worked at the Glen Carbon IHOP during 2011 and 2012.  In approximately December 2011, Garrison started hugging her, grabbing her buttocks, and running his hands down her back.  He frequently engaged in this unwelcome, sexually-offensive conduct until approximately January 2012 when she told him that she would kick him in the groin if he did not stop.

68.     Warnecke saw Garrison touch several other female servers in a similar manner including, but not limited to, Lauren Hurst, Tia Jenkins, and Krystal Hunt**.**  Warnecke complained to then general manager Nader (LNU) about Garrison's conduct, but Defendants, K. Ramadan and R. Ramadan took no action.

15

**Tracy Quigley**

69.    Between December 2011 and June 2013, Tracy Quigley worked at the Glen Carbon IHOP as a waitress and, for a period of time, a shift supervisor.  Garrison often touched her buttocks, chest and thighs in a sexual manner.  She saw him and other male employees grope female employees in a similar manner, several of whom complained about the sexual touching and comments.  He made crude sexual comments to T. Quigley such as telling her that he went into the bathroom and "jacked-off to her," and while thinking about other female employees.

70.    T. Quigley complained to then general manager Judy Lepping who responded, "if you let them feel your ass, they will work better for you."  Defendants and K. Ramadan did nothing to stop Garrison's sexual comments and conduct and the situation did not improve after her complaint. T. Quigley also heard Nikki Strasen complain to Lepping that Garrison was "feeling her up" to which Lepping responded, "suck it up."

71.    On at least two occasions in March 2013, Glen Carbon IHOP general manager R. Ramadan smacked T. Quigley on her buttocks.  R. Ramadan's actions were offensive and unwelcome and she complained to him about them.

72.    On another occasion, T. Quigley saw R. Ramadan inappropriately putting his hands between Timmons' legs. Timmons was visibly upset.  Defendants, K. Ramadan and R. Ramadan took no action to stop the harassment.

**Lindsey Quigley**

73.    In March 2012, Lindsey Quigley was hired as a waitress at the Glen Carbon IHOP where she worked until September 2012 when K. Ramadan transferred her to the Alton IHOP. During her employment at the Glen Carbon IHOP, Garrison hugged her and forced her into the

16

freezer where he grabbed her buttocks and tried to grab her breasts.  She complained to general manager R. Ramadan. After her complaint, Garrison did not touch her again, but made sexually provocative comments such as "look at that ass."

74.     A short time later, R. Ramadan began slapping L. Quigley's buttocks when he passed her.  When she complained to him, he laughed and said he was playing.  She also saw Garrison touch the posterior of other females including Timmons, T. Quigley, Lauren Ashley, Mandy LNU, and Judy LNU.  Defendants, K. Ramadan and R. Ramadan took no action to stop the harassment.

### Other Female Employees Were Subjected To Sexual Harassment

75.     Defendants, K. Ramadan and R. Ramadan subjected other female employees at the Glen Carbon IHOP to unlawful sexual harassment during their employment in violation of Section 703(a) of Title VII, 42 U.S.C. §2000e-2(a), including but not limited to Melissa Miller. This harassment included for example, sexually-offensive comments and unwanted touching by male employees such as R. Ramadan, Garrison and Cudena/Caldena.  R. Ramadan, Garrison, Cudena/Caldena and others regularly touched the aggrieved female employees in an offensive sexual manner and made sexual comments.

76.     The improper sexual comments and conduct were unwelcome, offensive, directed at the aggrieved female employees because of their sex and were sufficiently severe or pervasive to create an abusive work environment which altered the aggrieved female employees' terms and conditions of employment.

77.     Defendants, K. Ramadan and R. Ramadan knew or should have known about the sexual harassment of Clark, Hurst, Jenkins, O'Brien, Ashley Quigley, Lindsey Quigley, Tracy

Quigley, Strasen, Timmons, Warnecke, Miller and/or other aggrieved female employees, but failed to take corrective action to end it.

78.     The effect of the unlawful employment practices and policies of Defendants, K. Ramadan and R. Ramadan summarized in paragraphs 38-77 above has been to deprive the aggrieved female employees of equal employment opportunities and adversely affect their employment status because of their sex.

79.     The unlawful employment practices and policies of Defendants, K. Ramadan and R. Ramadan summarized in paragraphs 38-77 above were intentional.

80.     The unlawful employment practices and policies of Defendants, K. Ramadan and R. Ramadan summarized in paragraphs 38-77 above were committed with malice or with reckless indifference to the federally-protected rights of the aggrieved female employees.

**COUNT TWO**

**(Title VII –  Constructive Discharge --
B. Timmons and M. O'Brien)**

81.     Plaintiff re-alleges paragraphs 1 through 79 above and incorporates them into Count II.

82.     As a result of the egregious sexually harassing comments and conduct summarized above and the failure of Defendants, K. Ramadan and R. Ramadan to take measures to end the harassment, the working conditions of Timmons, O'Brien and other female employees were so hostile and intolerable they were compelled to resign.   Defendants, K. Ramadan and R. Ramadan knew that Timmons' and O'Brien's working conditions were abusive and intolerable. However, Defendants deliberately and unreasonably failed to take action to end the harassment and knew or should have known that their inaction would result in the resignations of Timmons,

18

O'Brien and other aggrieved female employees.

83. The effect of the unlawful conduct and employment practices of Defendants, K. Ramadan and R. Ramadan has been to deprive Timmons, O'Brien and other aggrieved female employees of equal employment opportunities and otherwise adversely affect their status as employees because of their sex.

84. The unlawful conduct and employment practices of Defendants, K. Ramadan and R. Ramadan toward Timmons, O'Brien and other aggrieved female employees were intentional.

85. The unlawful employment practices of Defendants, K. Ramadan and R. Ramadan were done with malice or reckless indifference to the federally- protected rights of Timmons, O'Brien and other aggrieved female employees.

**COUNT THREE**

**(Title VII – Sex Discrimination/Harassment – C. Schlottner)**

86.  Plaintiff re-alleges paragraphs 1 through 39 above and incorporates them into Count III.

87. Charles Schlottner worked as a cook at the Alton IHOP from October 18, 2012 until June 20, 2013, when he resigned due to the egregious sexual harassment by the restaurant's general manager S. Ramadan.

88. Schlottner was sexually harassed by S. Ramadan on multiple occasions. For example, S. Ramadan grabbed Schlottner's buttocks and genitals on several occasions. He told Schlottner that he was fascinated by his genitals and on at least one occasion, grabbed Schlottner's penis and attempted to give him one hundred dollars. S. Ramadan also harassed him by calling him on the telephone and sending text messages. Schlottner rebuffed S.

Ramadan's sexual advances and conduct/comments and told him to stop, but S. Ramadan refused.

89.     S. Ramadan's harassment of Schlottner was unwelcome, offensive, sexual in nature, and directed at Schlottner because of his sex.  This unlawful conduct was sufficiently severe or pervasive to create an abusive environment which altered the terms and conditions of Schlottner's employment.

90.     Defendants and K. Ramadan knew of and condoned this sex-based harassment of Schlottner.

91.     The effect of the unlawful conduct and employment practices of Defendants, K. Ramadan and S. Ramadan has been to deprive Schlottner of equal employment opportunities and otherwise adversely affect his status as an employee because of his sex.

92.     The unlawful conduct and employment practices of Defendants, K. Ramadan and S. Ramadan toward Schlottner were intentional and committed with malice or reckless indifference to his federally- protected rights.

<u>PRAYER FOR RELIEF</u>

Wherefore, the Commission respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Defendants, its officers, successors, assigns, and all persons in active concert or participation with them, including but not limited to K. Ramadan, S. Ramadan, R. Ramadan, Cudena/Caldena and Garrison, from engaging in sexual discrimination and harassment, intimidation, constructive discharge, and any other employment policies and practice which discriminate on the basis of sex.

B.     Order Defendants to implement and enforce policies, procedures, practices, and

programs which provide equal employment opportunities based on sex and eradicate the effects of its past and present unlawful employment practices.

C.      Order Defendants to make whole Clark, Hurst, Jenkins, O'Brien, Quigley, Quigley, Quigley, Strasen, Timmons, Warnecke, Miller and other female employees, by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of their unlawful employment policies and practices, including but not limited to reinstatement of Timmons and O'Brien.

D.      Order Defendants to make whole Clark, Hurst, Jenkins, O'Brien, Quigley, Quigley, Quigley, Strasen, Timmons, Warnecke, Miller and other female employees by providing compensation for past and future pecuniary losses resulting from the unlawful employment policies and practices summarized above in amounts to be determined at trial.

E.      Order Defendants to make whole Clark, Hurst, Jenkins, O'Brien, Quigley, Quigley, Quigley, Strasen, Timmons, Warnecke, Miller and other female employees by providing compensation for past and future nonpecuniary losses resulting from the unlawful policies and practices summarized above, including emotional distress, pain, suffering, inconvenience, loss of enjoyment of life, loss of reputation, and humiliation in amounts to be determined at trial.

F.      Order Defendants to pay punitive damages for their malicious and reckless conduct summarized above in amounts to be determined at trial.

G.      Order Defendants to make whole Charles Schlottner by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of their unlawful employment practices and policies,

21

including but not limited to reinstatement.

H.      Order Defendants to make whole Charles Schlottner by providing compensation for past and future pecuniary losses resulting from the unlawful employment policies and practices summarized above, in amounts to be determined at trial.

I.      Order Defendants to make whole Charles Schlottner by providing compensation for past and future nonpecuniary losses resulting from the unlawful policies and practices summarized above, including emotional distress, pain, suffering, inconvenience, loss of enjoyment of life, loss of reputation, and humiliation, in amounts to be determined at trial.

J.      Order Defendants to pay punitive damages to Charles Schlottner for their malicious and reckless conduct summarized above in amounts to be determined at trial.

K.      Grant such further relief as the Court deems necessary and proper in the public interest.

L.      Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.


Respectfully submitted,

JAMES L. LEE
Acting General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

ANDREA G. BARAN, MO #46520
Regional Attorney

 /s/ C. Felix Miller
C. FELIX MILLER, MO #28309
Supervisory Trial Attorney

JENNIFER ARENDES, MO #46638
Senior Trial Attorney

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
St. Louis District Office
Robert A. Young Federal Bldg.
1222 Spruce, Room 8.100
St. Louis, MO  63103
314-539-7914
Facsimile: 314-539-7895